UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| HOWARD S. WILLINGHAN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV-09-540-B-W |
| | ) | |
| TOWN OF STONINGTON, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S FEDERAL CLAIMS**

Howard Willinghan brings this action against his former employer, the Town of Stonington (Town), alleging violations of Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. § 794 *et seq.*, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12011 *et seq.*, and the Maine Human Rights Act, 5 M.R.S.A. § 4551 *et seq.*[1] The Town moves to dismiss his federal claims because he failed to file the complaint within 90 days of his receipt of the Equal Employment Opportunity Commission's (EEOC) right-to-sue notice. The Court concludes that the EEOC notice did not apply to Mr. Willinghan's Title II or Section 504 claims, and therefore, his federal causes of action are not barred.

**I.    STATEMENT OF FACTS**

---

[1] Mr. Willinghan cited Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, but only as remedial, not substantive law. *Pl.'s Obj. to Def.'s Mot. to Dismiss* at 1 n.1 (Docket # 7) (*Pl.'s Obj.*).

Since 1982, Howard Willinghan has suffered from a serious back condition that requires him to walk with a cane. *Complaint* ¶¶ 7, 11 (Docket #1) (*Compl.*). In January 2007, he was hired by the Town to be its Manger. *Id.* ¶ 13. During his interview, members of the Board of Selectman for the Town (Board) asked Mr. Willinghan about his cane. *Id.* ¶ 16. Mr. Willinghan informed the Board of the history and current status of his back condition. *Id.* ¶ 17. Shortly after assuming the responsibilities of Town Manager, Mr. Willinghan's back condition worsened. *Id.* ¶¶ 28, 29. Mr. Willinghan's doctor informed him that he needed to either seek immediate medical attention or make adjustments to his work conditions. *Id.* ¶¶ 29, 30. On October 15, 2007, Mr. Willinghan made his worsening condition known to the Board and requested accommodations for his disability or, in the alternative, authorization to take an unpaid leave from his position. *Id.* ¶¶ 38, 39. A few days after this request, on October 22, 2007, the Board moved for Mr. Willinghan's resignation. *Id.* ¶ 54. The next day, Mr. Willinghan submitted his letter of resignation to the Board. *Id.* ¶ 56. In his Complaint, he alleges that he was forced to resign from the position of Town Manager since the Board was considering his termination as an alternative. *Id.*

On September 26, 2008, Mr. Willinghan filed a complaint with the Maine Human Rights Commission (MHRC) and EEOC. *Id.* ¶ 64. On March 26, 2009, the MHRC issued a notice of right to sue Mr. Willinghan under 5 M.R.S.A. §§ 4612(6) and 4622(1)(C), authorizing him to pursue his case in court. *Id.* On May 20, 2009, the EEOC issued a Dismissal and Notice of Rights, which indicated that the EEOC

would be closing Mr. Willinghan's file because he "is pursuing [a] claim in another forum." *Def.'s Mot. to Dismiss Pl.'s Federal Claims (Rule 12(b)(1))*, Attach. 1, *Dismissal and Notice of Rights* (Docket # 5) (*Def.'s Mot.*). The notice was sent to Mr. Willinghan, the Town, and David G. Webbert, Mr. Willinghan's attorney. *Id.*

On October 22, 2009, Mr. Willinghan filed this Complaint in which he alleges that the Town's actions amount to "intentional discrimination, denial of reasonable accommodation for disability, retaliation for requesting reasonable accommodations, constructive discharge and willful and reckless disregard of Mr. Willinghan's rights." *Compl.* ¶ 1. Specifically, Mr. Willinghan claims that the Town

> intentionally discriminated against [him] because of his disabilities, denied him reasonable accommodations for his disabilities, and retaliated and discriminated against him for requesting reasonable accommodations for his disabilities, in violation of section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. § 749, Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, Section 503 of the Americans with Disabilities Act, 42 U.S.C. § 12203, Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), and the Maine Human Rights Act, 5 M.R.S.A. §§ 4551-4634.

*Id.* ¶ 70. On March 8, 2010, the Town moved to dismiss Mr. Willinghan's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). *Def.'s Mot.* at 1. On March 29, 2010, Mr. Willinghan objected. *Pl.'s Obj.* at 4. The Town replied on April 12, 2010. *Def.'s Reply to Pl.'s Obj. to Mot. to Dismiss Pl.'s Federal Claims* (Docket # 8) (*Def.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. The Town's Position

The Town's position is straightforward; it argues that Mr. Willinghan's claim is time-barred, as it was not filed within 90 days of the receipt of the EEOC's

Dismissal and Notice of Rights. "The notice of suit rights in the EEOC dismissal form refers specifically to claims that must be filed within 90 days of the receipt of that notice as being claims under '**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act.**'" *Def.'s Mot.* at 2 (quoting the EEOC Dismissal and Notice of Rights) (emphasis in the EEOC Notice). The Town argues that the 90 day filing provision noted in the EEOC Notice applies to Mr. Willinghan's Civil Rights Act claims, § 1981(a) claims, ADA claims, and Rehabilitation Act claims. *Id.* at 2-4. It reasons that Mr. Willinghan "should be barred from proceeding on any causes of action pursuant to the ADA, the Rehab Act, or the Civil Rights Act because he did not bring those causes of action within 90 days of receipt of his EEOC right to sue letter." *Id.* at 4.

### B. Mr. Willinghan's Position

Treating the Town's motion as premised on a failure to exhaust administrative remedies question, Mr. Willinghan counters that the Town's motion "is based on the incorrect legal premise that Plaintiff was required to exhaust his administrative remedies with the U.S. [EEOC] before bringing his federal disability discrimination claims to this Court." *Pl.'s Obj.* at 1. Mr. Willinghan explains that he "saw no advantage to bringing both a claim under the Maine Human Rights Act and a claim under its federal counterpart, Title I of the ADA, which is more difficult to prove, requires a larger number of employees, and offers virtually identical remedies." *Id.* at 2. Mr. Willinghan recognizes that claims under Title I of the ADA, "would have required administrative exhaustion with the EEOC and

4

compliance with the 90-day statute of limitations running from the issuance by the EEOC of its right-to-sue letter," so he "chose to pursue only federal claims that did not require administrative exhaustion and that have a six-year statute of limitations." *Id.* He argues that Section 504 of the Rehabilitation Act and Title II of the ADA have been interpreted "not to require administrative exhaustion" and have a statute of limitations "which is derived from the state statute of limitations applicable to personal injury actions (6 years in Maine)." *Id.* at 2, 3.

### C. The Town's Reply

The Town replies that Mr. Willinghan mistakenly treats its motion as raising a failure to exhaust administrative remedies when, in fact, the Town "agrees that Plaintiff exhausted his administrative remedies." *Def.'s Reply* at 1. Rather, Mr. Willinghan's error was that, "once having exhausted [the administrative remedies], he did not file his complaint alleging violations of federal law in a timely fashion following the action of the administrative agency (EEOC)." *Id.*

## III. DISCUSSION

### A. Legal Standard

"A motion to dismiss an action under Rule 12(b)(1) . . . raises the fundamental question whether the federal district court has subject matter jurisdiction over the action before it." *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 8 n.6 (1st Cir. 2005) (citation omitted). "The burden falls on the plaintiff clearly to allege facts demonstrating that he is a proper party to invoke federal jurisdiction." *Dubois v. United States Dep't of Agric.*, 102 F.3d 1273, 1281 (1st Cir.

1996) (citation and internal quotation marks omitted); *see also R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 30 (1st Cir. 1999); *Lord v. Casco Bay Weekly, Inc.*, 789 F. Supp. 32, 33 (D. Me. 1992). In a Rule 12(b)(1) motion, "[t]he court, without conversion, may consider extrinsic materials and, to the extent it engages in jurisdictional factfinding, is free to test the truthfulness of the plaintiff's allegations." *Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 37 (1st Cir. 2000); *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996) ("In ruling on a motion to dismiss for lack of subject matter jurisdiction . . . the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. . . . In addition, the court may consider whatever evidence has been submitted . . . .").

### B. The EEOC Decision and Rule 12(b)(1)

The Town attached as an exhibit to its motion to dismiss, the EEOC's Dismissal and Notice of Rights dated May 20, 2010, and urged the Court to consider the exhibit in ruling on its motion. *Def.'s Mot.* at 1 n.1, Attach. 1. Mr. Willinghan did not respond to whether the Court should consider the exhibit in ruling on the motion to dismiss. *Pl.'s Resp.* As the EEOC exhibit appears to be what it purports to be and as the Plaintiff has not objected, the Court has considered the exhibit as extrinsic material in ruling on the Rule 12(b)(1) motion. *Dynamic Image*, 221 F.3d at 37; *Aversa*, 99 F.3d at 1209-10; *Marcello v. Maine*, 464 F. Supp. 2d 38, 41 (D. Me. 2006).

The EEOC notice, which is dated May 20, 2009, dismisses Mr. Willinghan's EEOC complaint. *Def.'s Mot.* Attach. 1. The Court takes judicial notice that Mr. Willinghan filed his Complaint with this Court on October 22, 2009—more than ninety days after notice was given to Mr. Willinghan of the EEOC dismissal. This motion, therefore, squarely raises the issue as to whether the ninety day requirement applies and, if it applies, whether Mr. Willinghan's lawsuit must be dismissed. The parties cited no case law in support of their respective positions and the Court could locate none.

### C. Timing: The Statutory Requirements

The Town refers the Court to Title VII of the Civil Rights Act (Title VII or the Civil Rights Act of 1964), Title 42 U.S.C. § 2000e *et seq.*, which provides in part:

> If a charge filed with the Commission pursuant to subsection . . . (c) of this section is dismissed by the Commission . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge [] by the person claiming to be aggrieved . . . .

42 U.S.C. § 2000e-5(f)(1). The Town argues that this provision "applies to the Plaintiff's ADA claims" through 42 U.S.C. § 12117, and to the Plaintiff's Rehabilitation Act claims through 29 U.S.C. § 794a(a)(1).[2] *Def.'s Mot.* at 3, 4. The

---

[2] 42 U.S.C. § 12117(a) provides

> The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title,, concerning employment.

29 U.S.C. § 794a(a)(1) provides

7

Town is correct on its readings of 42 U.S.C. § 12117 and 29 U.S.C. § 794a(a)(1), but wrong on the applicability of these sections to the Plaintiff's causes of action.

The provisions of 42 U.S.C. § 12117(a) make clear that the ninety day window of § 2000e-5 is applicable to Title I of the ADA. 42 U.S.C. § 12117(a) (2009) (stating that "[t]he powers, remedies, and procedures set forth in section[] 2000e-5 . . . shall be the powers, remedies, and procedures this subchapter provides . . . to any person alleging discrimination on the basis of disability in violation of any provision of this chapter . . . ."). However, 42 U.S.C. § 12117 is the enforcement provision for Title I of the ADA and the Plaintiff's ADA claims were brought under Title II.[3] Accordingly, it is inapplicable to the Plaintiff's ADA claims.

Similarly, the provisions of 29 U.S.C. § 794a(a)(1) make clear that the ninety day window of § 2000e-5 is applicable to § 501 (current version at 29 U.S.C. § 791) claims under the Rehabilitation Act. 29 U.S.C. § 794a(a)(1) (2009) (stating that "[t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights

---

> The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5 (f) through (k)) (and the application of section 706(e)(3) (42 U.S.C. 2000e-5(e)(3)) to claims of discrimination in compensation), shall be available, with respect to any complaint under section [501 (current version at 29 U.S.C. § 791)] of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

[3] Title II's enforcement provision is found at 42 U.S.C. § 12133, which provides

> The remedies, procedures, and rights set forth in section 794a of Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination on the basis of disability in violation of section 12132 of this title.

8

Act of 1964 (42 U.S.C. § 2000e-16), including the application of sections 706(f) through 706(k) (42 US.C. § 2000e-5(f) through (k)) . . . to claims of discrimination in compensation), shall be available, with respect to any complaint under section [501 (current version at 29 U.S.C § 791)] of this title, to any employee . . . aggrieved by the final disposition of such complaint"). However, the Plaintiff's Rehabilitation Act claims were brought under § 504 (current version at 29 U.S.C. § 794) and § 794a(a)(1) does not apply to Rehabilitation Act claims brought under Section 504. Rather, it is 29 U.S.C. § 794a(a)(2) that applies to claims brought under § 504.[4]

### D. Timing: The Regulations

In addition, the Department of Justice (DOJ) has promulgated regulations under Title II that support the view that time limits are not applicable to a Title II complaint. In addressing the resolution of complaints, the regulations state

> *At any time*, the complainant may file a private suit pursuant to section 203 [Title II] of the [ADA], whether or not the designated agency finds a violation.

28 C.F.R. § 35.172 (2010) (emphasis added). The rulemaking comments in the Federal Register state:

> Again, consistent with section 504, it is not the Committee's intent that persons with disabilities need to exhaust Federal administrative remedies before exercising their private right of action.

---

[4] 29 U.S.C. § 794a(a)(2) provides

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section [504 (current version under 29 U.S.C. § 794)] of this title.

9

*Nondiscrimination on the Basis of Disability in State and Local Gov't Servs.*, 56 Fed. Reg. 35,694, 35,713 (July 26, 1991). The DOJ's comments in the Federal Register regarding section 35.172 state:

> [Title II] requires the Department of Justice to establish administrative procedures for resolution of complaints, but does not require complainants to exhaust these administrative remedies. The Committee Report makes clear that Congress intended to provide a private right of action with the full panoply of remedies for individual victims of discrimination. *Because the Act does not require exhaustion of administrative remedies, the complainant may elect to proceed with a private suit at any time.*

*Id.* at 35,714 (emphasis added).

The regulations emphasize that a Title II plaintiff may pursue a suit in federal court at any time within the applicable statute of limitations, even if the plaintiff has not availed himself of the administrative process. Logic therefore suggests that, where a plaintiff has availed himself of the administrative process, the same rule should apply. Furthermore, there is no indication in the regulations that the rule is curtailed after a plaintiff has pursued administrative remedies. Finally, because Section 504 of the Rehabilitation Act is not mentioned in the Dismissal and Notice of Rights, it appears that the 90-day filing requirement does not apply to all claims brought under this section of the Rehabilitation Act.[5]

### E. Policy Considerations

---

[5] As Mr. Willinghan recognizes, the result would have been different if he had pursued a Title I claim. *Pl.'s Obj.* at 2 (stating that "Title I of the ADA . . . would have required administrative exhaustion with the EEOC and compliance with the 90-day statute of limitations running from the issuance by the EEOC of its right-to-sue letter"); *Skidmore v. Am. Airlines, Inc*. 198 F. Supp. 2d 131, 134 (D. P.R. 2002) (stating that "a claim proceeding under Title I of the ADA is governed by the administrative and filing requirements of Title VII").

10

Even though Congress has made it clear that a claimant under Title II of the ADA and under § 504 of the Rehabilitation Act is not required to exhaust administrative remedies, there has been no suggestion that a claimant who seeks to resolve the complaint administratively should be discouraged or penalized for doing so. Generally, the resort to administrative remedy before filing suit is desirable because it allows the claimant, the respondent, and the agency to attempt a resolution in a more informal and less expensive forum.

If the Town's argument is accepted, because Mr. Willinghan sought to resolve his claim administratively and did not file suit within ninety days of the administrative decision, his claim must be summarily dismissed—a result that severely sanctions the voluntary resort to administrative process. By contrast, a Title II or § 504 claimant with an identical claim, but who has made no attempt to resolve his grievance administratively, is free to file suit at any time within the applicable statute of limitations. The Town's argument is based solely on its construction of the statutes, but it has not suggested why, in its view, the law deliberately treats similar claimants so differently, punitively enforcing strict time limits on persons who voluntarily seek administrative resolution and applying none on those who do not.

Contrasting the language of Title I of the ADA and § 501 of the Rehabilitation Act with the language of Title II and § 504 leads to the conclusion that Congress exempted these categories of claimants from the common requirement of exhaustion of administrative remedies. It is consistent with

11

congressional policy for Title II and § 504 claimants that, if the administrative exhaustion requirement does not apply to them, neither should the time limits for claimants who do voluntarily pursue administrative remedies. The Court has concluded that the statutes the Town cites are inapplicable. Therefore, in the absence of a sensible policy justification for the Town's statutory interpretation, the Court concludes that the Town's view is erroneous.

Because the timing requirements of Title VII do not apply to Title II of the ADA or § 504 of the Rehabilitation Act, Howard Willinghan's Complaint is timely.

## IV. CONCLUSION

The Court DENIES the Town of Stonington's Motion to Dismiss (Docket # 5).

SO ORDERED.

                                    /s/ John A. Woodcock, Jr.
                                    JOHN A. WOODCOCK, JR.
                                    CHIEF UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2010